Filed 4/12/16  CDLC Catering v. Klein CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CDLC CATERING, INC., | B263158 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC487608) |
| v. | |
| WENDY KLEIN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge.  Affirmed.

Herbert Abrams for Plaintiff and Appellant.

Reback, McAndrews, Kjar, Warford & Stockalper and Albert E. Cressey III for Defendant and Respondent.

\* \* \* \* \* \*

Plaintiff CDLC Catering, Inc. (CDLC), appeals the judgment following the trial court's grant of summary judgment in favor of defendant tax accountant Wendy Klein on a claim for accounting malpractice. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Except as noted, the facts are undisputed. In May 2010, Klein entered an oral agreement with chef and restauranteur Bruno Baio to assist with the formation of CDLC. According to an invoice dated May 31, 2010, CDLC paid Klein $250 for management advisory services rendered on May 4, 2010, described as "help w[i]th online incor[po]ration." As reflected in a second invoice dated June 30, 2010, CDLC paid Klein $50 for "follow up on new company corp status" on June 3, 2010, and $50 to "apply for FEIN [(federal employment identification number)]" on June 30, 2010. According to Klein and Baio's testimony, Klein rendered no further services for CDLC.

On July 1, 2010, Baio sold 500 shares of CDLC to Clyde Gomez for $115,000, giving Gomez 50 percent ownership of the company. Both Baio and Klein testified Klein was not involved in the transaction or the issuance of stock for CDLC. Klein further testified she never met Gomez or had any interactions with him, and he never engaged her professional services for any reason. Gomez confirmed he had never met or spoken to Klein.

Gomez and CDLC eventually filed a series of lawsuits in the aftermath of this transaction. On May 3, 2011, Gomez personally sued Baio, Klein, CDLC and others, alleging he was fraudulently induced to enter the transaction with Baio. He eventually dismissed Klein and CDLC from that lawsuit without prejudice. After a bench trial, the superior court ruled in favor of the defendants, rejecting Gomez's position that his $115,000 was intended to be invested in CDLC rather than given directly to Baio to purchase 50 percent of CDLC from him. Gomez appealed, and the Court of Appeal affirmed.

CDLC filed this lawsuit on July 2, 2012, alleging accounting malpractice against Klein. It claims Klein "negligently and carelessly rendered her services in that she failed to insure that the stock of [CDLC] was issued in exchange for cash in the sum of

2

$115,000.00 and property valued at $115,000.00 and further failed to advise all of the shareholders that the said cash and property had to be delivered to [CDLC] as and for said stock. [Klein] thus failed to render the skill required of and commonly exercised by certified public accountants." It further alleged, "As a direct and proximate result of [Klein's] negligence and carelessness, the stock was not issued as agreed, most importantly the cash of $115,000.00 was not received by [CDLC], but was misappropriated by Bruno Baio, one of the shareholders of [CDLC]."[1]

Klein moved for summary judgment, arguing CDLC lacked evidence to demonstrate the duty, breach of duty, and causation elements of negligence, and alternatively, CDLC's claim was barred by collateral estoppel arising from the lawsuit by Gomez against Baio. The trial court granted summary judgment on the first ground and entered judgment in favor of Klein. It declined to reach the second ground. CDLC timely appealed.

## DISCUSSION

### 1. *Legal Standards*

We review the grant of summary judgment de novo, considering all the evidence set forth in the moving and opposition papers except evidence for which objections were made and sustained. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment must be granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, we must decide whether the defendant has conclusively negated a necessary element of the plaintiff's claim or has established an affirmative defense and has demonstrated no material issue of fact requires a determination at trial. (Code Civ. Proc., § 437c, subd. (*o*); *Guz, supra*, at p. 334.)

---

[1] CDLC filed a lawsuit against Baio on July 1, 2013.

*2.    Analysis*

To establish its claim of professional negligence, CDLC must offer evidence showing "'(1) the duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.'" (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1077.) CDLC failed to offer any evidence Klein owed any duty to CDLC as alleged in the complaint, so summary judgment was proper.[2]

CDLC alleged Klein's professional duty extended to "insure that the stock of [CDLC] was issued in exchange for cash in the sum of $115,000.00 and property valued at $115,000.00" and to "advise all of the shareholders that the said cash and property had to be delivered to [CDLC] as and for said stock." Yet, Klein offered undisputed evidence she never had any such duty with regard to her services to Baio and CDLC. According to her invoices, she was paid $350 for management advisory services rendered between May and June 2010, *before* the July 1, 2010 Baio and Gomez transaction, for "help w[i]th online incor[po]ration," "followup on new company corp status," and "apply for FEIN." Both she and Baio testified she rendered no further services for CDLC, including any services related to stock issuance or the July 1, 2010 transaction. Nor has she ever met or spoken to Gomez.

CDLC attempts to raise a dispute by arguing that $300 of Klein's services were "completely unaccounted for," suggesting perhaps those services included assisting CDLC in issuing stock. But Klein's invoices say nothing about rendering services related to issuing stock for CDLC, and, as we have explained, other undisputed evidence demonstrates the services she did render did not relate to CDLC's stock issuance.

---

[2]    On appeal, Klein argues in the alternative that collateral estoppel defeats CDLC's claim. Like the trial court, we decline to address that contention because Klein's other argument is dispositive.

4

Likewise, all of Klein's services were rendered before the July 1, 2010 transaction, further defeating any inference that the services reflected in Klein's invoices included work related to CDLC's stock issuance or the July 1, 2010 Baio and Gomez transaction.

CDLC also points to the following excerpt from the deposition of Monia Zeroual, CDLC's office manager, to argue Klein's duties included handling CDLC's stock issuance:

"Q. Okay. Now, as the office manager, you did have contact with Wendy Klein; is that correct?

"A. Yes, correct.

"Q. And what services did Wendy Klein perform for these various corporations?

"A. She was the CPA. So accounting things.

"Q. Okay.

"A. And legal things.

"Q. In the case of CDLC, Inc., what did she do with respect to that corporation?

"A. CDLC—

"Q. Yes.

"A. —Inc.?

"Q. I'm sorry. CDLC Catering, Inc.

"A. She did—actually did everything to open the corporation, she took care of that, of the legal things, to open the corporation.

"Q. Okay. Did she—*was she involved in the issuance of the stock?*

"A. *I think she was. Because I was not.*

"Q. Okay.

"A. And for me, she was doing everything that needed to be done to open this corporation.

"Q. Okay. And so as far as the issuance of stock is concerned, *she would have at least monitored the financial transactions that occurred with respect to the issuance of the stock?*

5

"A.    ***Yes.***" (Boldface and italics added.)

This testimony does not rebut Klein's evidence she was not involved in CDLC's stock issuance. Zeroual did not testify she had any personal knowledge of Klein's duties, such as having learned the actual terms of any agreement with Klein or having discussed Klein's duties with Baio or anyone else. At best, Zeroual only had a vague and speculative understanding that Klein was supposed to do "accounting things" and "legal things." When asked specifically about stock issuance, Zeroual merely *thought* Klein was involved, and only because Zeroual was not herself involved. And her understanding was not clarified with the vague followup question of whether Klein "would have at least monitored" stock transactions. In light of Klein's invoices and Baio's and Klein's unequivocal testimony that Klein was not involved in stock issuance, Zeroual's testimony does not create a dispute of fact defeating summary judgment.

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.

6